**FRANK FELIX ASSOCIATES, LTD., Plaintiff–Appellant,**

v.

**AUSTIN DRUGS, INC., Defendant–Appellee.**

**No. 630, Docket 96–7604.**

United States Court of Appeals, Second Circuit.

Argued Dec. 12, 1996.

Decided April 10, 1997.

Stephen R. Sugrue, New York City (Herriot, Coti & Sugrue, New York City, of counsel), for Plaintiff–Appellant.

James H. Allyn, New York City (Allyn & Fortuna, New York City, of counsel), for Defendant–Appellee.

Before CARDAMONE and PARKER, Circuit Judges, and WEXLER, Judge.[*]

PARKER, Circuit Judge:

Frank Felix Associates ("Felix") appeals from the judgment of the United States District Court for the Eastern District of New York (Thomas C. Platt, *Judge*) awarding Felix damages of $10,250 for breach of a settlement agreement. Felix contends that upon breach of the settlement agreement by Austin Drugs, Inc. ("Austin"), Felix was entitled under New York General Obligations Law § 15–501(3) (McKinney 1989) to assert its pre-settlement claims. Finding no error, we affirm.

## I. BACKGROUND

In the mid–1980s, Felix entered into an oral agreement with Interstate Cigar Company ("ICC"), the predecessor of Austin, to install computer systems on ICC's property. Unfortunately for Felix, ICC went bankrupt. In May of 1991, several investors, some of whom were formerly associated with ICC, bought Austin in the ICC bankruptcy proceedings. Austin was a subsidiary of ICC at the time of the purchase. Subsequent to the purchase of Austin, Austin had Felix install

---

[*] The Honorable Leonard D. Wexler, of the United States District Court for the Eastern District of New York, sitting by designation.

computer systems in Austin stores like those Felix previously installed in stores owned by ICC.

On May 20, 1992, one year after the bankruptcy proceedings, Felix sent Austin a memorandum claiming that Austin owed Felix $70,000 in arrearages under the ICC account incurred prior to the bankruptcy sale and $75,000 in arrearages incurred by Austin after May. of 1991. After Felix learned that Austin planned to replace the computer system, Felix sent another memorandum to Austin on June 22, 1992, claiming an outstanding balance of over $462,000. Then the parties entered into settlement discussions.

Felix and Austin thereafter executed a written settlement agreement, wherein Austin agreed to pay Felix $50,000 as the amount owed for Austin's past use of the computer system, and agreed to return a tape drive and a high-speed printer. The settlement agreement provided that Austin had to meet these obligations by October 1, 1992, or Felix would renew its prior claims. Austin made the $50,000 payment and returned the printer promptly. However, it did not return the tape drive. When Austin failed to return the tape drive, Felix sent a renewed demand letter on October 22, 1992, claiming an outstanding balance of $412,000.

Austin requested that Felix send someone to remove the tape drive on or about the time Austin received Felix's October 22 letter. Austin indicated that it needed Felix's technical assistance to remove the device. However, Felix agreed to remove the tape drive only if Austin promised to pay Felix $250. Austin refused to pay Felix, but made clear that Felix could come by and pick up the device. Felix never attempted to retrieve it. Months later, after Consumer Value Stores ("CVS") bought out Austin, CVS scrapped the tape drive when it installed a new computer system in the former Austin stores.

Felix then brought this suit, asserting all of its pre-settlement demands. Claiming that the settlement agreement was no longer binding due to Austin's breach, Felix sought in excess of $800,000. After a bench trial, the district court concluded that Austin breached the settlement agreement but that the breach was not material. The court awarded Felix $10,000 in damages for Austin's use of the computer system one month beyond the date when it was supposed to return the tape drive under the settlement agreement, concluding that the tape drive allowed Austin to use the rest of the proprietary software provided in the pre-settlement leasing agreement between Felix and Austin. The court also awarded $250 in damages for the cost Felix would have incurred in retrieving the device. The court did not award any damages for Austin's use of the tape drive beyond the date when Austin asked Felix to remove the system. The court also did not award damages for the destruction of the tape drive, reasoning that the tape drive would not have been destroyed had Felix removed it from Austin's property when given the opportunity.

## II. DISCUSSION

■ We agree with the district court that Austin plainly breached the settlement agreement by not returning the tape drive on or before October 1. We also agree that, in light of Austin's payment to Felix of $50,000 under the settlement agreement, Austin's return of the high-speed printer, and Austin's request that Felix remove the tape drive at the end of October, Austin's failure to return the tape drive on October 1 was not a material breach. Assuming, as appears appropriate, that the settlement agreement was an executory accord, we hold that New York law requires that an executory accord be materially breached before a party may sue based on its pre-settlement claims. Accordingly, Felix was not entitled to assert its pre-settlement claims.

### A. Whether a Material Breach of the Accord Is Required

Assuming, as Felix argues, that the settlement agreement was an executory accord, under New York law an aggrieved party may elect to sue on the original obligation that is the subject of the accord in cases where the accord has not been performed. *See Ellenbogen & Goldstein, P.C. v. Brandes*, 226 A.D.2d 237, 641 N.Y.S.2d 28, 29 (1st Dep't

1996) (citing *Denburg v. Parker Chapin Flattau & Klimpl,* 82 N.Y.2d 375, 383, 604 N.Y.S.2d 900, 905, 624 N.E.2d 995, 1000 (1993)); *Plant City Steel Corp. v. National Machinery Exch., Inc.,* 23 N.Y.2d 472, 478, 297 N.Y.S.2d 559, 562, 245 N.E.2d 213, 215 (1969).[1] Under New York General Obligations Law § 15–501(3), "[i]f an executory accord is not performed according to its terms by one party, the other party shall be entitled either to assert his rights under the claim, cause of action, contract, [or] obligation ... which is the subject of the accord, or to assert his right under the accord."

New York law requires, as appellant stresses, that an executory accord be performed "according to its terms" if the obligee wishes to avoid the creditor's original claims. *Id.; see also Albee Truck Inc. v. Halpin Fire Equip. Inc.,* 206 A.D.2d 789, 791, 615 N.Y.S.2d 118, 120 (3d Dep't 1994) (citing *Denburg,* 82 N.Y.2d at 383, 604 N.Y.S.2d at 905, 624 N.E.2d at 1000); *American Bank & Trust Co. v. Koplik,* 87 A.D.2d 351, 354, 451 N.Y.S.2d 426, 428 (1st Dep't 1982); *Loblaw v. Wylie,* 50 A.D.2d 4, 8, 375 N.Y.S.2d 706, 709–10 (4th Dep't 1975). However, the New York Court of Appeals has not addressed whether a non-material failure to perform an executory accord fully will allow a plaintiff to reinstate his prior claims, as neither *Denburg* nor *Plant City Steel* were confronted with the issue. While New York cases suggest that nothing less than full performance of an executory accord will bar suit on a creditor's original claims, each has involved substantial and material nonperformance by the obligee under the accord. *See, e.g., Albee Truck Inc.,* 206 A.D.2d at 789, 615 N.Y.S.2d at 119 ("[t]he agreement was not implemented"); *Koplik,* 87 A.D.2d at 352–53, 451 N.Y.S.2d at 427 (defendant agreed to pay $50,000 but only paid $7,000); *Loblaw,* 50 A.D.2d at 6–8, 375 N.Y.S.2d at 708–09 (defendant did not attempt to satisfy $125,000 accord and allegedly transferred assets to defeat creditors).

Because no New York court has specifically addressed whether the breach of an executory accord must be material before a party to the accord can elect to sue on its original claims, it falls to this Court to predict how the New York Court of Appeals would interpret New York law on this point. *See In re Joint Eastern & Southern Dist. New York Asbestos Lit.,* 897 F.2d 626, 636 (2d Cir.1990); *Calvin Klein Ltd. v. Trylon Trucking Corp.,* 892 F.2d 191, 195 (2d Cir.1989). In this endeavor, we must consider "all the resources the highest court could use, including decisions reached in other jurisdictions." *Francis v. INA Life Ins. Co.,* 809 F.2d 183, 185 (2d Cir.1987) (citations omitted).

■ Although New York General Obligations Law § 15–501(3) provides that an executory accord must be "performed according to its terms," not every breach, however insubstantial, will allow a plaintiff to disregard an executory accord and sue on its original claims. Such an interpretation could lead to absurd and inequitable results where, despite a debtor's substantial performance in reliance on an executory accord, the most trivial breach could revive a creditor's original claims. The creditor could obtain payment of a contested debt and, due to a minor breach of the accord, receive the windfall entitlement to reassert its pre-settlement claims. We do not believe New York courts would adopt such a view, especially in light of the difference in the treatment of executory accords under New York's General Obligations law and the treatment of executory accords under prior New York common law. Under modern New York law, executory accords, if in writing, are enforceable contracts. Therefore, based on ordinary contract principles, a non-material breach does not justify nonperformance by the other party.

Under New York common law, an executory accord was not an enforceable contract. Only full performance constituted satisfaction of the accord and extinguished the pre-existing debt. *Denburg,* 82 N.Y.2d at 384, 604

---

**1.** We assume that the agreement was an executory accord as opposed to a substitute agreement. Whereas an executory accord extinguishes a claimant's prior claims upon performance of the accord, a substitute agreement extinguishes a claimant's prior claims upon execution of the

agreement. *See Denburg,* 82 N.Y.2d at 383, 604 N.Y.S.2d at 906, 624 N.E.2d at 1000. Whether an agreement is an executory accord or substitute agreement is, of course, a question of the parties' intent. *Denburg,* 82 N.Y.2d at 384, 604 N.Y.S.2d at 906, 624 N.E.2d at 1001.

N.Y.S.2d at 906, 624 N.E.2d at 1001. In 1937, the New York legislature made executory accords binding contracts, provided that the promise is in writing and signed by the parties to be bound. *Id.;* General Obligations Law § 15–501(2). Accordingly, it seems appropriate to apply general contract principles to enforceable executory accords under modern New York law, keeping in mind the special purpose of the executory accord, which grants a limited window of opportunity within which an obligee can render performance to a creditor to escape a creditor's prior claims. This appears consistent with the ruling of the New York Court of Appeals, which determined that before a prior obligation may be sued upon, the accord must be "breached or repudiated." *See Plant City Steel,* 23 N.Y.2d at 478, 297 N.Y.S.2d at 562, 245 N.E.2d at 215.

In our interpretation of New York law, we are aided by decisions in other jurisdictions. State high courts and federal appellate courts interpreting state laws have uniformly determined that before a party to an executory accord can elect to sue on its original claims, the executory accord must be materially breached. *See, e.g., Zenith Drilling Corp. v. Internorth, Inc.,* 869 F.2d 560, 563 (10th Cir.1989) (interpreting Oklahoma law, noting that defendant breached executory accord and that "the only question is whether that breach was material"); *Coffeyville State Bank v. Lembeck,* 227 Kan. 857, 610 P.2d 616, 618–19 (1980) (debtor's material breach of executory accord revives discharged agreement); *Warner v. Rossignol,* 513 F.2d 678, 683 (1st Cir.1975) (interpreting Maine law, the court characterized a settlement agreement as an "accord executory" and held that "[i]f defendant did not repudiate or commit a material breach of the settlement agreement, ... defendant is entitled to spe-

cific performance of the compromise"). This Court cited *Warner* with approval in holding that a settlement agreement was enforceable absent special circumstances, including a material breach of the agreement. *See In re Air Crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975,* 687 F.2d 626, 629 (2d Cir.1982); *see also Clark v. Elza,* 286 Md. 208, 406 A.2d 922, 927 (1979). "An executory accord is simply a type of bilateral contract. As long as the basic requirements to form a contract are present, there is no reason to treat a settlement agreement differently than other contracts which are binding." *Id.* 406 A.2d at 928. Lower state and federal courts have reached the same conclusion.[2] Based on this authority, at least one federal district court within this Circuit has held that New York law would require an executory accord to be materially breached before pre-settlement claims may be reinstated. *See Conan Properties, Inc. v. Mattel, Inc.,* No. 84–Civ.–5799 (JSM), 1990 WL 209366, *3–4 (S.D.N.Y. Dec. 4, 1990).

Our conclusion is also consistent with the view taken in the Restatement (Second) of Contracts, which states that "[w]hether a breach by the obligor discharges the obligee's duty under the accord is governed by the rules [relating to performance and nonperformance of contracts]." Restatement (Second) of Contracts § 281 cmt. b (1981). These rules include the requirement that for an obligor's duties to be discharged on account of failed performance, the obligee's failure to perform must be material. *Id.* § 241; *see also* 6 A. Corbin, *Corbin on Contracts* § 1275, pp. 111–13 (1962) (To "make[ ] the creditor's prior claim again enforceable .... the debtor's breach must be a material breach, going to the essence, and discharging the creditor from his contractual duty."); E. Allan Farnsworth, *Contracts* §§ 4.24 n.9, 8.18

---

**2.** *See, e.g., Kapco Mfg. Co. v. C & O Enterp., Inc.,* 605 F.Supp. 253, 256 (N.D.Ill.1985) (applying Illinois law, holding that a "material breach" is necessary to reinstate plaintiff's claims under the First Circuit's reasoning in *Warner* ); *Caldwell v. Armstrong,* 642 P.2d 47, 49 (Colo.App.1981) (holding that "[o]nce it is established that there is a valid accord and satisfaction, it is governed by the same rules as applied to other contracts," including the doctrine of substantial performance); *Browning v. Holloway,* 620 S.W.2d 611,

617 n. 6 (Tex.Civ.App.1981) ("the inquiry should be whether there was a breach, and, if so, whether the breach was material so as to give plaintiffs the election to rescind"); *Tuskegee Alumni Housing Found., Inc. v. National Homes Constr. Corp.,* 450 F.Supp. 714, 720 (S.D.Ohio 1978) ("This Court has decided that the better reasoning is that substantial performance of an [executory] accord is sufficient to satisfy it.") (Ohio law), *aff'd mem.,* 624 F.2d 1101 (6th Cir.1980).

(1990) (applying rules relating to the material breach of contracts to accords).

We believe, based on this authority, that New York courts would require that any breach of an executory accord be material before a party may sue upon the original obligation. We therefore turn to the question of whether Austin materially breached the executory accord.

### B. *Whether Austin Materially Breached the Executory Accord*

■ Whether Austin materially breached the executory accord is a question of law. Therefore, while we defer to the district court's findings regarding the relevant facts, we review its conclusion that Austin did not commit a material breach de novo. *See Petereit v. S.B. Thomas,* 63 F.3d 1169, 1176 (2d Cir.1995).

■ Under New York law, for a breach of a contract to be material, it must "go to the root of the agreement between the parties." *See Septembertide Pub., B.V. v. Stein and Day, Inc.,* 884 F.2d 675, 678 (2d Cir. 1989) (citing *Canfield v. Reynolds,* 631 F.2d 169, 178 (2d Cir.1980)). A party's obligation to perform under a contract is only excused where the other party's breach of the contract is so substantial that it defeats the object of the parties in making the contract. *See Babylon Assocs. v. County of Suffolk,* 101 A.D.2d 207, 215, 475 N.Y.S.2d 869, 874 (2d Dep't 1984) (citing *Callanan v. Powers,* 199 N.Y. 268, 284, 92 N.E. 747, 752 (1910)).

In determining if Austin's breach defeated the object of the executory accord, we must consider the special purpose of the contract. As we previously noted, an executory accord grants an obligor a limited window of opportunity within which to satisfy a creditor's demands before the creditor may again assert its original claims. Accordingly, close adherence to the terms of the accord is important, especially to the time-frame within which substitute performance must be rendered to the creditor. *See* Restatement (Second) of Contracts § 241(a) (materiality depends, in part, on "the extent to which the injured party will be deprived of the benefit

which he reasonably expected"); *id.* § 242(c) (in determining whether material breach relieves non-breaching party's obligation to perform, "the extent to which the agreement provides for performance without delay" should be considered).

■ Austin clearly did not meet its obligation to comply with the executory accord's deadline for full performance. Not until twenty days after it was supposed to have returned Felix's tape drive did Austin invite Felix to remove the device. In fact, Austin never returned it and the device was eventually scrapped. We do not believe these facts establish that Austin's breach was material, however. Austin's breach must be viewed in light of its substantial compliance with its other obligations under the accord. *See id.* § 241 (materiality depends on all of the facts and circumstances, including, inter alia, the extent to which the injured party will be deprived of the benefits reasonably expected, the extent to which the injured party can be adequately compensated for its loss, and the good faith of the breaching party). Austin substantially complied with the terms of the executory accord by promptly paying Felix the agreed-upon $50,000 and returning Felix's high-speed printer.

Moreover, any harm to Felix caused by Austin failing to return the tape drive promptly could be fully compensated in monetary damages without undermining the basis of the executory accord, given Austin's substantial performance of its other obligations under the accord. Accordingly, the mere fact that the district court found damages for Austin's delay in the amount of $10,000 does not render the breach material. *See id.* § 241(b) and cmt. c (materiality of breach depends in part on the extent to which the injured party can be compensated for its loss).

The fact that Austin never returned the tape-drive and that it was eventually scrapped when CVS took over Austin's stores does not warrant a different conclusion. On October 20 Austin invited Felix to remove it. This was a reasonable invitation, given the fact that removal required the technical expertise that Felix had. Felix never did so, essentially abandoning the tape drive. Given

these circumstances, we believe the district court justifiably attributed little weight to Felix's claim that the tape drive was very valuable. We also believe the district court correctly concluded, based on its view of the evidence, that Felix easily could have retrieved the device if it had wanted to. Accordingly, we conclude that the twenty-day delay between the time Austin was supposed to return the tape drive and the time it invited Felix to remove the device from Austin's stores was not a material breach of the executory accord. Felix was not entitled to sue on its original claims.

## III. CONCLUSION

We affirm the judgment of the district court.